# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7531 | **DATE** | 9/30/2003 |
| **CASE TITLE** | Veronica Parker-Taylor vs. John E. Potter | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: Motion for summary judgment [23-1] is granted in part and denied in part.** |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | **SEP 3 0 2003** | |
| | Notified counsel by telephone. | | date docketed | **38** |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VERONICA PARKER-TAYLOR,

    Plaintiff,

v.

JOHN E. POTTER,
POSTMASTER GENERAL OF THE
UNITED STATES POSTAL SERVICE,

    Defendant.

) No. 00 CV 7531
)
) Wayne R. Andersen
) District Judge

## MEMORANDUM, OPINION AND ORDER

Veronica Parker-Taylor ("Parker-Taylor"), is an African-American woman who is a former employee of the United States Postal Service ("Postal Service"). She has filed this action alleging race, pregnancy, and retaliation discrimination. The defendant Postal Service has filed a motion for summary judgment. For the following reasons, we grant in part and deny in part the motion for summary judgment.

### BACKGROUND

Parker-Taylor began employment with the Postal Service at the Tri-City Postal Facility ("Tri-City"), which provides mail service to Glenwood, Flossmoor, and Homewood, Illinois. In February 1998, after completing her 90-day training period, Parker-Taylor was assigned to Glenwood as a T-6 letter carrier, where she worked until April 6, 2000. In that position, Parker-Taylor was responsible for covering five different delivery routes as a substitute for the regular carriers on their day off. Collectively, these five routes are known as a "swing." As a

38

letter carrier, Parker-Taylor spent approximately two hours in the morning sorting and preparing mail for delivery (referred to as "casing" the mail) and about six hours in the afternoon delivering the mail. From October 1999 until April 6, 2000, Parker-Taylor reported to three managers at Tri-City: Duane Schwartzkopf and Mike Mylniec, who were distribution supervisors, and their boss, Jim Traversa, who was the Postmaster at Tri-City (collectively, "management" or "managers").

In November 1999, Parker-Taylor informed her managers that she was pregnant and that her baby was due in July 2000. At this time, Parker-Taylor did not disclose any medical restrictions related to her pregnancy and, therefore, she continued to perform her regular job duties. At the beginning of January 2000, however, Parker-Taylor submitted a note from her obstetrician to the Postal Service which provided the following work restrictions: (1) "No heavy lifting, nothing beyond 20 lbs." and (2) "preferred inside work during inclement weather as opposed to carrying the mail on her usual route outside."

The Postal Service job description for a letter carrier provides that a carrier might be required (1) to carry mail bags that weigh up to 35 pounds; (2) to load and unload mail that weighs up to 70 pounds; and (3) to deliver mail in all kinds of weather.

The Postal Service considered Parker-Taylor's restrictions as a request for light duty and placed her on "light duty" status. Under the National Collective Bargaining Agreement ("Agreement"), light duty is provided for any full time regular or part-time flexible postal employee who is temporarily unable to perform her assigned duties as a result of an off the job illness or injury. The Agreement provides that light duty assignments will be the decision of the installation head who will be guided by the examining physician's restrictions and the

employee's ability to perform the duties involved. The Agreement also states that an employee on light duty is not guaranteed full time work, but is entitled only to such light duty work that is available.

After receiving her medical restrictions, the Postal Service initially allowed Parker-Taylor to perform as much of her regular duties that she felt fell within her restrictions. For example, management allowed Parker-Taylor to deliver all or parts of her assigned routes that she was able to carry, and when she was unable to deliver mail (because of her weight or weather restrictions), she remained inside and was allowed to case all available mail on her swing. When there was no available outside work that fell within her restrictions and there was no extra mail to case, the managers sent Parker-Taylor home early, but she had the option to use sick or annual leave to make up eight hours.

Within a few weeks of receiving her medical restrictions, the Postal Service claims that it became apparent that Parker-Taylor could not deliver mail on most of her routes in a consistent and efficient manner. Thus, on February 19, 2000, the Postal Service decided that Parker-Taylor would remain inside and would be allowed to case all available mail on her five routes.

Parker-Taylor claims that a white co-worker who was pregnant at the same time, Kristine Anderson, submitted the exact same letter from her physician with the same restrictions and was not placed on light duty. Parker-Taylor claims that she was not allowed the same accommodation as Kristine Anderson. Moreover, Parker-Taylor claims that three co-workers saw Parker-Taylor being sent home early on many occasions when there was work

to do, but work was always found for Kristine Anderson, and Ms. Anderson was never sent home early.

On February 29, 2000, Parker-Taylor contacted an EEO representative, claiming that the Postal Service's failure to provide her with full time work was based upon her race and her pregnancy. On April 21, 2000, Parker-Taylor filed an EEO complaint alleging that from February 4, 2000 to April 6, 2000, the Postal Service discriminated against her on account of her race and pregnancy by not providing her with full time work within her doctor's restrictions. She also alleged that the Postal Service retaliated against her for her EEO activity by continuing to refuse her full time work.

An EEO investigation revealed that from January 6, 2000 through March 29, 2000, Parker-Taylor was released early based on management decisions 21 times. The same report noted that a pregnant white female part-time employee (presumably Kristine Anderson) had no record of being sent home with less than 8 hours of work even though both employees had submitted letters from their doctors detailing work restrictions.

Parker-Taylor stopped reporting to work after April 6, 2000. On April 8, 2000 the Postal Service received a note from Parker-Taylor's obstetrician stating that Parker-Taylor was under a doctor's care for the pregnancy and that, if she feels she cannot work, then she should not do so. On April 17, 2000, the Postal Service received a note from Dr. Gopal, a psychologist, indicating that Parker-Taylor was being treated by him for depression. Shortly thereafter, Parker-Taylor informed the Postal Service that, due to stress and pregnancy-related issues, she would not return to work until after the birth of her baby. The Postal Service regulations regarding leaves of absence require that all requests for sick or other leave must be

4

submitted in advance on P.S. Form 3971 and that, for absences over three days, the employee must submit appropriate medical documentation showing incapacity to work or the need to care for a family member. When an absence is disapproved or when the employee fails to provide appropriate medical support, the absence is considered as an absence without leave ("AWOL").

In a letter dated April 13, 2000, the Postal Service sent Parker-Taylor copies of Form P.S. 3971 and advised that the forms should be filled out so that the Postal Service knows which type of leave Parker-Taylor is requesting. On June 5, 2000, Parker-Taylor submitted a Form WH-380 requesting leave under the Family and Medical Leave Act.

After her baby was born on August 2, 2000, Parker-Taylor failed to contact management concerning her leave status. Thus, on September 6, 2000, the Postal Service sent Parker-Taylor a "five-day" letter, stating that she was required to submit appropriate documentation to support her absence and that, without such documentation, she would be considered AWOL. After receiving the letter, Parker-Taylor failed to submit any medical documentation and failed to contact management to request additional leave. Therefore, on September 29, 2000, the Postal Service sent out a second "five-day" letter, advising Parker-Taylor that she was being given a second and final chance to provide medical documentation to support her absence.

On October 11, 2000, 11 days after the second "five-day" letter, Parker-Taylor submitted a medical statement from her therapist, which stated that he had been treating Parker-Taylor for stress and that, as a result of this condition, she was unable to return to work. While this documentation was not submitted in a timely manner and did not indicate the

5

anticipated duration of Parker-Taylor's medical condition, management took no action at that time to discipline her.

On October 25, 2000, Parker-Taylor submitted a P.S. Form 3971, which indicated that she was under stress and advised that she had "no desire to return to work for USPS." No medical documentation was submitted with this form. Parker-Taylor admits that, at the time she submitted this form, she had no desire to return to work for the Postal Service. On November 27, 2000 and January 12, 2001, Parker-Taylor submitted Forms 3971 requesting leave without medical documentation.

For over five months, from October 11, 2000 to March 12, 2001, Parker-Taylor failed to submit any medical documentation supporting her absence. As a result, on March 12, 2001, the Postal Service sent Parker-Taylor a third "five-day" letter, explaining that she had failed to submit any medical documentation to support her absence for over five months and advising that she was being given a final chance to turn in medical documentation. The letter further advised her that the failure to send in medical documentation within the next five days might result in disciplinary action, including removal. Parker-Taylor received this letter on or about March 12, 2001, but failed to submit any medical documentation and failed to contact management regarding her absence. As a result, the Postal Service issued Parker-Taylor a notice of removal on April 4, 2001, stating the Postal Service was discharging Parker-Taylor from the Postal Service for: (1) being AWOL; (2) failing to submit medical documentation supporting her absence; and (3) failing to follow leave request procedures.

On May 24, 2001, Parker-Taylor filed another EEO complaint claiming that the Postal Service unlawfully discharged her on account of her race, her pregnancy, and in retaliation for her prior EEO activity.

## DISCUSSION

On a motion for summary judgment, the court must draw all reasonable inferences in favor of the non moving party. *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). Nonetheless, the non moving party must present more than a scintilla of evidence to successfully oppose the motion. *Walker v. Shansky*, 28 F.3d 666, 671 (7th Cir. 1994). To avoid summary judgment, the non moving party must designate specific facts, rather than conclusory allegations, showing a genuine issue that might affect the outcome of the suit. *Beck Oil Co., Inc. v. Texaco Ref & Mktg., Inc.*, 25 F.3d 559, 561 (7th Cir. 1994); *see also Mills v. First Federal Say. &Loan Ass'n of Belvidere*, 83 F.3d 833, 840(7th Cir. 1 996)(conclusory allegations are insufficient to create a genuine issue of material fact).

In her amended complaint, Parker-Taylor alleges that the Postal Service violated her federal rights by refusing to provide her full time work during the period from February 4, 2000 to April 4, 2000 ("Failure to Provide Work Claim"). She claims that these actions were taken on account of her race, her pregnancy, and in retaliation for her prior EEO activity. Parker-Taylor also alleges that the Postal Service discharged her on account of her race, her pregnancy, and in response to her EEO activity ("Discharge Claim"). We will address each of these claims in turn.

7

I.   Failure to Provide Work Claim

   A.   Race and Pregnancy Discrimination

Title VII makes it unlawful to discriminate against any individual with respect to the terms, conditions, or privileges of employment based upon certain characteristics, including race and sex. *See* 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act of 1978 ("PDA") amended Title VII of the Civil Rights Act of 1964 by providing that the prohibition against employment discrimination "because of sex" or "on the basis of sex" includes discrimination based on pregnancy, childbirth, or related medical conditions. *See* 42 U.S.C. § 2000e(k).

Claims under the PDA are subject to the same analysis applicable to other disparate treatment cases under Title VII. *Geier v. Medtronic, Inc.*, 99 F.3d 238, 241 (7th Cir. 1996). A plaintiff may prove disparate treatment by using either direct or indirect proof of discrimination. Because Parker-Taylor has no direct evidence of pregnancy or race discrimination, she must proceed under the *McDonnell Douglas* burden-shifting method.

Under the *McDonnell Douglas* test, Parker-Taylor must first establish her *prima facie* case, which requires her to demonstrate that: (1) she was a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse affect on her employment; and (4) she suffered from differential application of work or disciplinary rules. *See Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 863 (7th Cir. 1997); *Geier*, 99 F.3d at 241-42. Then, the burden shifts to the Postal Service to "articulate a legitimate, nondiscriminatory reason" for its decision. *Greenslade*, 112 F.3d at 863. If the Postal Service successfully meets its burden, Parker-Taylor must prove by a preponderance of the evidence that the legitimate reasons offered by the Postal Service were not its true reasons for its decision, but were a pretext for discrimination. *Id.*

Parker-Taylor claims that the Postal Service discriminated against her on the basis of her race and pregnancy by not providing her with the same accommodations that were given to other similarly situated employees. She claims that she was sent home early because allegedly there was no work available when other employees were allowed to work who had the same restrictions as Parker-Taylor.

In this case, there is no dispute that Parker-Taylor is a member of a protected class because she is African-American and was pregnant. Moreover, there is no dispute that she suffered an adverse affect on her employment because she got less than 8 hours of work per day. Rather, the parties dispute: 1) whether she was qualified for her position; and 2) whether she suffered from a differential application of the work rules than those applied to other similarly situated employees.

The Postal Service first argues that Parker-Taylor could not perform her job because of her medical restrictions which prevented her from lifting anything over 20 pounds and from delivering mail in inclement weather. However, these exact same limitations were placed on a pregnant white co-worker, Kristine Anderson. Anderson's treatment creates a question of material fact as to whether Parker-Taylor could be considered as qualified for her job (she was certainly as qualified as Anderson) and whether the Postal Service treated Anderson, a pregnant white employee differently than Parker-Taylor. Additionally, there is a question of fact as to whether non-pregnant employees were allowed to sit and case mail while Parker-Taylor was not. Therefore, we find that there are material issues of fact surrounding whether Parker-Taylor was qualified for her position and whether other workers were treated more favorably.

Moreover, the EEO investigation report is instructive on these issues. The report notes that "from January 6, 2000 through March 29, 2000 the complainant [Parker-Taylor] registered 21-instances of being released early to make 8-hours based on management's decision to let her go

9

home. It is significant to note that one of the named comparisons, also pregnant, White Female, is a Part Time Flexible (PTF) City Letter Carrier and has no record of being sent home with less than 8-hours based on her pregnancy, also submitted a medical with an estimated due date of May 15, 2000." Moreover, the EEO report also notes that six witnesses submitted voluntary statements identifying what they feel was the allegedly differential treatment afforded Parker-Taylor by the Postal Service officials. For these reasons, we find that a question of material fact is present as to whether Parker-Taylor suffered from differential application of work rules.

The Postal Service next argues that it has a legitimate, non-discriminatory reason for its actions. It claims that it acted out of a legitimate business concern. The Postal Service argues that Parker-Taylor's ability to deliver the mail became too unpredictable, which caused confusion, inefficiencies, and increased costs for the Tri-City office.

Parker-Taylor must then show that the reasons offered by the Postal Service were a pretext for discrimination. In this case, she argues that the Postal Service's stated reason of increased costs and business concerns is a pretext for discrimination. In support of her argument, she points to the differential treatment between her and Kristine Anderson. The Postal Service argues that the reason that it treated Anderson differently than Parker-Taylor is because they never got a doctor's report regarding restrictions for Ms. Anderson. However, the evidence reveals that Ms. Anderson claims that she gave the Postal Service a doctor's report regarding her restrictions, and an EEO investigator similarly found that a doctor's report for Ms. Anderson was given to the Postal Service. Thus, the rational of the Postal Service that it treated Ms. Anderson differently than Ms. Parker-Taylor because she did not have the same medical restrictions placed on her, has been shown to be false. The evidence reveals that Anderson did have the exact same medical restrictions as Parker-Taylor.

Therefore, there is a disputed issue of material fact as to whether the Postal Service's stated reasons for its actions is actually a pretext for discrimination.

For these reasons, we deny the Postal Service's motion for summary judgment on the race and pregnancy failure to provide work discrimination claims.

B.  Retaliation Claim

Parker-Taylor also claims that the Postal Service retaliated against her because of her EEO activity by continuing to refuse her work. Parker-Taylor may prove retaliation by either direct evidence that she engaged in protected activity and as a result suffered an adverse employment action or by the indirect method of proof. *See Dyson v. City of Chicago*, 282 F.3d 456 (7th Cir. 2002); *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.2d 640 (7th Cir. 2002).

To establish a *prima facie* claim of retaliation under the indirect method, plaintiff must establish that: (1) she engaged in statutorily protected expression; (2) she performed her job according to the employer's legitimate expectations; (3) she suffered a materially adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *See Roth v. Lutheran General Hosp.*, 57 F.3d 1446, 1459 (7th Cir. 1995); *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1457 (7th Cir. 1994). If this prima *facie* case can be established, the burden of production shifts to defendant to provide a legitimate nonretaliatory reason for its action. *Gleason v. Mesirow Fin. Inc.*, 118 F.3d 1134, 1142 (7th Cir. 1997). In order to prevail, plaintiff must rebut the defendant's nonretaliatory reasons for the adverse action and establish that a retaliatory motive was the determining factor behind the defendant's action. *Roth*, 57 F.3d at 1459 (citing *Rennie v. Dalton*, 3 F.3d 1100, 1108-09 (7th Cir. 1993), cert. denied, 510 U.S. 1111 (1994)).

In this case, there is no dispute that Parker-Taylor did engage in statutorily protected expression by filing an EEO complaint. Moreover, she did suffer a materially adverse employment action by not receiving 8 hours of work per day. Therefore, we will examine the remaining two factors–whether she performed her job according to the Postal Service's expectations and whether Parker-Taylor was treated less favorably than other similarly situated employees who did not engage in statutorily protected activity.

The Postal Service first argues that Parker-Taylor cannot establish retaliation because she was not qualified for the job. We reject this argument for the same reasons stated in the earlier section. We find that there is a question of material fact surrounding whether Parker-Taylor was meeting the Postal Service's expectations of performance.

Moreover, for the same reasons as stated in the earlier section, a question of material fact exists regarding whether Parker-Taylor was treated less favorably than other similarly situated employees who did not engage in protected activity, namely Kristine Anderson.

Finally, evidence may exist which suggests a causal link between Parker-Taylor's protected expression and the adverse job action. There is evidence that, after Parker-Taylor filed her EEO complaint, she was warned to back off by a member of the Postal Service management. This allegation, if proven, would be direct evidence of retaliation.

For the foregoing reasons, we deny the Postal Service's motion for summary judgment on Parker-Taylor's failure to provide work retaliation claim.

II. <u>Discharge Claim</u>

Parker-Taylor alleges that the Postal Service discharged her on the basis of her race, her pregnancy, and in retaliation for her prior EEO activity. This claim is specious. The undisputed facts show that after leaving work on April 6, 2000, Parker-Taylor failed to report to work for an

12

entire year and, due to her failure to comply with the mandatory leave of absence rules, she was AWOL for much of the year. Neither before, nor after, the birth of her child did Parker-Taylor bother to inform the Postal Service as to the length of her leave or her expected return date. This failure caused the Postal Service to send Parker-Taylor two five-day letters on September 6, 2000 and September 29, 2000, advising her that she was required to submit appropriate documentation to support her absence and that, without such documentation, she would be considered AWOL. Parker-Taylor failed to timely respond to either of these letters.

Finally, in October 2000, Parker-Taylor submitted a letter from her therapist stating that he was treating Parker-Taylor for stress and that she was unable to work. Shortly thereafter, however, Parker-Taylor advised the Postal Service that she had no desire to return to work and then failed to submit any documentation supporting her absence for a period of over five months. The Postal Service sent out a third "five-day" letter on March 12, 2001 and, not surprisingly, Parker-Taylor failed to respond. Finally, on April 4, 2001, the Postal Service issued a notice of removal discharging Parker-Taylor for violating mandatory Postal Service leave of absence rules.

Given these undisputed facts, Parker-Taylor cannot establish her *prima facie* case for discharge for several reasons. As an AWOL employee who violated the Postal Service's leave of absence rules and was thrice warned to provide a doctor's note to support her continued absence, she can hardly claim that she was qualified for her job at the time she was discharged. Nor has Parker-Taylor established that similarly situated employees who were not of the same race, were not pregnant, or who had not engaged in protected activity, were treated differently.

Parker-Taylor also fails to establish *a prima facie* case for her discharge retaliation claim because she cannot prove the required causal link that she would not have been terminated had she not engaged in the prior EEO activity. There was over a year between Parker-Taylor's prior EEO

13

activity (February 2000) and the alleged retaliatory discharge (April 4, 2001), a length of time that the Seventh Circuit consistently has held to be too attenuated to raise an inference of discrimination. *See Sauzek v. Exxon Coal USA, Inc.,* 202 F.3d 913, 918-19 (7th Cir. 2000). *See also Filipovic v. K & R Express Sys., Inc.,* 176 F.3d 390, 399 (7th Cir. 1999)(four months); *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 511(7th Cir. 1998)(five months). Because of the attenuated time frame, Parker-Taylor would have to show additional circumstances to demonstrate that the Postal Service's acts might not have been legitimate. *See McKenzie,* 92 F.3d at 485. Parker-Taylor has failed to show any such circumstances.

Even assuming Parker-Taylor could make out a prima *facie case* for discriminatory or retaliatory discharge, these claims still fail because she cannot establish that the Postal Service's nondiscriminatory and nonretaliatory reason for discharging her was pretextual. The material facts show that Parker-Taylor was discharged because she was AWOL and refused to submit supporting medical documentation as required by Postal Service rules. These facts and the Postal Service's efforts to warn Parker-Taylor as to the likely results of her failure to submit proper documentation prevent Parker-Taylor from showing pretext. *See Gonzalez v. Ingersoll Mill. Mach. Co.,* 133 F.3d 1025, 1036 (7th Cir. 1998)(retaliation claim failed where plaintiff warned and given an opportunity to improve); *Ali v. Brown,* 998 F. Supp. 917, 927 (N.D. Ill. 1996) (pretext not shown where federal employee was AWOL, failed to produce medical documents to support leave request, and was warned removal would follow).

In sum, the facts show that Parker-Taylor left work for over a year, refused to communicate with the Postal Service regarding her leave or her intended return date, and failed to provide proper medical documentation to support her absence. The Postal Service discharged Parker-Taylor because she was AWOL and she ignored its letter warning that if she failed to submit proper

14

documentation to support her absence, she might be discharged. The Postal Service has provided a legitimate explanation for its action, and Parker-Taylor can point to no evidence of a discriminatory or retaliatory motive for her discharge. *See Hartley v. Wisconsin Bell, Inc.,* 124 F.3d 887, 890 (7th Cir. 1997). Accordingly, the Postal Service is entitled to summary judgment on the discharge claim.

## CONCLUSION

For the foregoing reasons, we grant in part and deny in part the motion of the defendant United States Postal Service for summary judgment (# 23-1). We deny the motion for summary judgment on the issue of Plaintiff's race, pregnancy, and retaliation failure to provide work discrimination claims. We grant summary judgment in favor of the Postal Service on the issue of Plaintiff's discharge from employment claims. A status hearing is set for November 18, 2003 at 9:00 a.m.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: September 30, 2003